IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Buzayene Kidane, et al., | NO. C 04-00325 JW |
| Plaintiff(s), | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CERTAIN FACTUAL ALLEGATIONS, WITH LEAVE TO AMEND** |
| County of Santa Clara, et al., | |
| Defendant(s). | |

## I. INTRODUCTION

Plaintiffs Buzayene Kidane ("Kidane"), Brian Logan ("Logan"), and Phillip Williams ("Williams") (collectively "Plaintiffs") bring this action against Defendants County of Santa Clara ("County"), Santa Clara County Probation Department ("SCCPD"), John Cavalli ("Cavalli"), Richard Munley ("Munley"), Tenly Petrino ("Petrino"), and Debbie Hulen ("Hulen") (collectively "Defendants"), alleging employment discrimination based on race and national origin, hostile work environment, harassment and retaliation, and a pattern and practice of disparate treatment.

Currently before this Court is County and SCCPD's January 21, 2005 Motion to Dismiss Certain Factual Allegations Contained in the Second Amended Complaint, or Alternatively, for a More Definite Statement (hereinafter "Defendants' Motion"). Plaintiffs Logan and Williams oppose the Motion, but agree to voluntarily dismiss their claim for Wrongful Discipline. For the reasons set forth below, this Court GRANTS Defendants' Motion but also GRANTS Plaintiffs Leave to Amend

their Second Amended Complaint.

## II. BACKGROUND

This lawsuit arises out of an employment discrimination action against Defendants. Plaintiffs filed this lawsuit under 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 ("Title VII") (42 U.S.C. § 2000e-(5)(e)(1)), and California's Fair Employment and Housing Act ("FEHA") (CAL. GOV'T CODE § 12900 et seq.).

### A. Plaintiff Brian Logan

Plaintiff Logan began working for SCCPD in 1986. Logan was promoted to Group Counselor II in 1989 and Senior Group Counselor in 1990. Logan alleges that he later made several unsuccessful attempts at being promoted in 1992, October 1996, September 1999, October 2000, June 2001, and March 2002. (SAC ¶¶ 63-64, 67, 70, 74-75, 80.) More specifically, Logan alleges that in December 2001, he applied for a promotion, but instead received the position of Deputy Probation Officer II, which is effectively a demotion. (SAC ¶ 77.) Allegedly, Logan was denied promotion because: there was a preference for non-African-American candidates with fewer qualifications and education than Logan; there were newly implemented background check requirements; his co-workers and supervisors provided wrongful assessments of his work ethics and enthusiasm; and he lacked access to training at the "Leadership Academy." (SAC ¶¶ 67, 74-75, 79-80, 82.) Logan alleges that, on several occasions, he sought promotion advice from a Supervisor. The Supervisor allegedly told Logan that he was perceived as lazy and that he should be terminated even though he had no official reprimands. Furthermore, the Supervisor told Logan that the Probation Department was "afraid" of his knowledge based on his previous employment as a union representative and sought signs of "loyalty." (SAC ¶ 71.) Logan alleges that, following knee injury, he was placed on "light duty" work but that his work was scrutinized more closely than non-African-American employees. (SAC ¶¶ 65-66.) Other alleged instances of harassment and disparate treatment include: an anonymous letter distributed through Juvenile Hall, stating that Logan ought to "refrain coming to work dressed as a 16-year old gang banger"; unspecified harassment following his report on disparate treatment of African-American

1  males in Juvenile Hall; a noose found around an African-American Star Trek character by another co-
2  worker; assault on an African-American co-worker for wearing a baseball cap backwards; an e-mail
3  sent out regarding "probation hate"; and retaliation for filing an EEOC complaint. (SAC ¶¶ 68, 73, 76,
4  81, 83.) Logan claims that internal complaints regarding these occurrences were not met with action,
5  but rather, further harassment resulted. (SAC ¶¶ 68, 78.)

6  Logan sought medical help after his health allegedly deteriorated because of work-related
7  stress. He is now taking anti-depressants and receiving counseling. (SAC ¶ 72.)

**B. Plaintiff Philip Williams**

Plaintiff Williams has a long-standing history with SCCPD. Williams began part-time work with the SCCPD in 1982 and became a permanent hire in 1985. Williams received several promotions: Group Counselor II in September 1986, Senior Group Counselor in October 1988, Probation Deputy Officer II in June 1989, and Probation Deputy Officer in May 1993. He alleges that his work has been consistently rated satisfactory. He has perfect attendance, and no records of discipline. (SAC ¶ 84.) Williams contends that he has been ranked among the top seven candidates, which has allowed him to interview for openings as a Supervising Probation Officer. Upon his manager's insistence that he obtain more cross-training in order to be promoted, Williams requested and was granted assignment to the Juvenile Unit. (SAC ¶ 85.) Williams alleges that he experienced harassment and disparate treatment while he was at the Juvenile Unit. These include: an anonymous phone call cautioning him to "watch his back"; comments by a manager calling the promotional candidates list the "worst list ever" based on the presence of African-American candidates; statements by supervisors calling him lazy; statements by managers calling his behavior "stereotypical"; and reference to three African-American candidates on the promotional list as "the three B's." Additionally, Williams alleges that supervisors made unfounded statements to a hiring panel regarding his attendance. (SAC ¶¶ 86-90, 94.) Williams claims that he made internal complaints regarding these instances, but that no subsequent action was taken, and so he was dissuaded from filing a formal complaint. (SAC ¶¶ 86, 89, 92, 98.) Williams alleges that his work was more closely scrutinized

United States District Court
For the Northern District of California

than other non-African-American employees, that his working hours were closely monitored despite no attendance problems, and that he was reprimanded for attending meetings. (SAC ¶ 92.) Williams alleges that he made several unsuccessful attempts at promotion in August 1999, mid-2001, and December 2002. (SAC ¶¶ 93, 98-99.) Williams claims multiple reasons for being denied promotion, including: preference for non-African-American candidates, racially motivated comments made by a manager, and the elimination of a promotion system based on objective criteria. (SAC ¶¶ 93, 96, 98-99.) Williams also claims that he met with "the ultimate hiring authority" to request assistance, but that this effort proved unsuccessful. (SAC ¶ 97.) Williams claims that he has suffered blood pressure problems as the result of the stress induced by harassment. His doctor subsequently put him on sick leave for a three-month duration based on work-related stress. He also began seeing a therapist. (SAC ¶ 95.)

## III. STANDARDS

**A. Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)**

Pursuant to FED. R. CIV. P. 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. Dismissal can be based either on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistrer v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973). However, mere conclusory allegations couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). A complaint should not be dismissed under Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Moore v.

City of Costa Mesa, 886 F.2d 260, 262 (9th Cir. 1989).

**B. Motion for a More Definite Statement Under Rule 12(e)**

FED. R. CIV. P. 12(e) permits a party to move for a more definite statement "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading."  Generally, this motion is limited "to situations where a pleading suffers from unintelligibility rather than want of detail, and if the requirements of the general rule as to pleadings are satisfied and the opposing party is fairly notified of the nature of the claim such motion is inappropriate." Castillo v. Norton, 219 F.R.D. 155, 163 (D. Ariz. 2003) (citations omitted).  The court has wide discretion over a motion for a more definite statement, and "may require that the complaint be amended, or that the information sought be supplied by declarations or other means." Davison v. Santa Barbara High Sch. Dist., 48 F. Supp. 2d 1225, 1228 (C.D. Cal. 1998). Rule 12(e) motions "are not favored by the courts since pleadings in the federal courts are only required to fairly notify the opposing party of the nature of the claim." Resolution Trust Corp. v. Dean, 854 F. Supp. 626, 649 (D. Ariz. 1994) (citations omitted).  "If the moving party could obtain the missing detail through discovery, the motion should be denied." Davison, 48 F. Supp. 2d at 1228 (citing Beery v. Hitachi Home Elecs. (Am.), Inc., 157 F.R.D. 477, 480 (C.D. Cal. 1993)).  A Rule 12(e) motion should not be used "to assist in getting facts in preparation for trial as such; other rules relating to discovery, interrogatories and the like exist for such purposes." Castillo, 219 F.R.D. at 163 (citations omitted).

## IV. DISCUSSION

**A. Timeliness of Disparate Treatment Allegations**

**1. Title VII: 42 U.S.C. 2000e-(5)(e)(1)**

As a preliminary matter, this Court notes that claims for retaliation and failure to promote are treated as claims for disparate treatment. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 103 (2002).

Title VII prescribes two limitations periods: 180 days and 300 days.  Which limitation period

5

applies to a given plaintiff's case depends upon which administrative agencies with which that plaintiff filed her complaint(s). In a deferral state, such as California, which has its own civil rights statute and agency, filing a complaint with California's Department of Fair Employment and Housing ("DFEH") and with the federal Equal Employment Opportunity Commission ("EEOC") entitles plaintiffs to the substantive use of events up to 300 days prior to filing the administrative complaint. Nat'l R.R. Passenger Corp., 536 U.S. 101, 102-03 (2002); see 42 U.S.C. § 2000e-(5)(e)(1). By contrast, filing only with the EEOC entitles Plaintiffs to the substantive use of events up to 180 days prior to filing the administrative complaint. Morgan, at 103. Caselaw permits a plaintiff to use events beyond the 180-day or 300-day limitations period for background purposes. Morgan, at 103.

There is a dispute as to whether a Title VII's 180- or 300- day limitations period applies here. This is partly because Plaintiff's filings are inconsistent. Plaintiff's Second Amended Complaint alleges they filed a complaint with the EEOC. (Docket No. 34.) However, Plaintiff's Opposition to Defendant's Motion states they filed complaints with both the EEOC and the DFEH. (Docket No. 41.)

Although some of the allegedly discriminatory events occurred within the shorter 180-day limitations period, many took place outside that period.

Logan filed a complaint with the EEOC on December 13, 2002. (SAC ¶ 8.) Title VII's 180-day limitations period would limit Logan to sue only on events that occurred on June 16, 2002 or later. This includes events such as: the e-mail of June 22, 2002, the alleged failure to promote in September 2002, the "out of sight, out of mind" statement in September 2002, and the comments by Probation Manager, Harold McLean, in both January 2003 and April 2003 stating "I hope you're not making trouble." (SAC ¶¶ 81-84.)

Williams filed a complaint with the EEOC on January 28, 2003. (SAC ¶ 8.) Title VII's 180-day limitations period would limit Williams to sue only on events that occurred on July 28, 2002 or later. This includes events such as: the November 2002 filing of an internal complaint, the December 2002 failure to promote allegation, and the second-hand comments of disparate treatment regarding other African-American employees. (SAC ¶¶ 98-99.)

In the landmark case of Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Court delineated several applicable legal principles. First, the Court held that *discrete discriminatory acts,* which are not time-barred by the statutory guidelines of Title VII, are admissible as *actionable events*. Morgan, 536 U.S. at 104 (2002). The Court also held that time-barred acts are nevertheless admissible as *background evidence* to contextualize actionable events. Id. at 104. In other words, a Title VII plaintiff may plead acts that occurred prior to the 180-day (or 300-day) time limitations period for background purposes, provided that an actionable event amounting to disparate treatment occurred within the time limitations period. See McGinest v. GTE Service Corp., 300 F.3d 1103, 1115 (9th Cir. 2002); Lyons v. England, 307 F.3d 1092, 1108 (9th Cir. 2001).

Thus, although Plaintiffs' Second Amended Complaint may be adequate as is, because Plaintiffs plead pre-limitations period facts for background purposes, the Second Amended Complaint is made ambiguous by judicial admissions in Plaintiffs' motion papers. This Court grants Defendants' Motion. Logan and Williams are given Leave to Amend the Second Amended Complaint for the purpose of adding allegations of a DFEH filing, if true. Such an allegation would help to clarify whether Title VII's 300-day limitations period applies here.

**2. FEHA: CAL. GOV'T CODE § 12900 et seq.**

There is no dispute as to the statutory timeliness of Plaintiff's FEHA claims. Under FEHA, all events up to one year prior to the filing of the administrative complaint are admissible. CAL. GOV'T CODE § 12960(d); Romano v. Rockwell Int'l Inc., 14 Cal. 4th 479, 492 (1996); Accardi v. Superior Court, 17 Cal. App. 4th 341, 349 (1993).

Logan filed his administrative complaint with the EEOC on December 13, 2002. Therefore, events from December 13, 2001 are admissible for Logan. This includes: his demotion to Deputy Probation Officer II in January 2002, the denial of access to the Leadership Academy, the background check requirement, the e-mail regarding "overcoming probation hate," the statements Logan was "out of sight, out of mind," and the statements by Probation Manager, Harold McLean, that, "I hope you are not making any trouble." (SAC ¶¶ 77-83.)

7

Williams filed his administrative complaint with the EEOC on January 28, 2003. Therefore, events from January 28, 2002 are admissible for Williams. This includes: the internal complaint he filed in November 2002, the failure to promote in December 2002 despite his passing of a promotion exam, and the second-hand comments of disparate treatment regarding other African-American employees. (SAC ¶¶ 98-100.)

**B. Plaintiffs' Motion for Sanctions**

Plaintiffs' Motion for Sanctions based upon a meritless Motion to Dismiss is DENIED. Defendants have made their motion to dismiss in good faith and on appropriate grounds.

**C. Defendants' Motion to Dismiss the Eighth Cause of Action**

Defendants' Motion to Dismiss Plaintiff's Eighth Claim (Violation of 42 U.S.C. § 1983) against County and SCCPD is DENIED. Plaintiffs have alleged the bare minimum facts to comply with the liberal pleading requirements of FED. R. CIV. P. 8.

**C. Wrongful Discipline Claim Is Voluntarily Dismissed**

Plaintiffs have VOLUNTARILY DISMISSED their cause of action for Wrongful Discipline against County and SCCPD.

### V. CONCLUSION

This Court GRANTS Defendants' Motion to Dismiss and GRANTS Plaintiffs Leave to Amend their Second Amended Complaint in order to allege whether they made a filing with the DFEH.

Dated: June 10, 2005

/s/James Ware
JAMES WARE
United States District Judge

04cv325mtd

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

A. Catherine Lagarde aclagarde@aol.com
Charles A. Bonner cbonner799@aol.com
Lisa Herrick lisa.herrick@cco.sccgov.org

**Dated:  June 10, 2005**                                              **Richard W. Wieking, Clerk**


**By:/s/JWchambers**
     **Ronald L. Davis**
     **Courtroom Deputy**